**George GONZALES, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 3–88–023–CR.**

Court of Appeals of Texas, Austin.

March 1, 1989.

---

Elizabeth Golden, San Marcos, for appellant.

Jeffrey Van Horn, Lockhart, for appellee.

Before SHANNON, C.J., and CARROLL and ABOUSSIE, JJ.

PER CURIAM.

A jury found appellant guilty of the second-degree felony offense of burglary of a building. Tex.Pen.Code Ann. § 30.02(a)(1) (1974). Punishment, enhanced by a prior felony conviction, was assessed by the trial court at imprisonment for twenty years. Tex.Pen.Code Ann. § 12.42(b) (1974).

In point of error one, appellant argues the State failed to produce evidence sufficient (1) to establish his intent to commit theft and (2) to corroborate the testimony of his alleged accomplice.[1] In point two, appellant contends the trial court erred in overruling his first motion for instructed verdict, which motion was also based on the lack of corroboration of the accomplice witness.

RELEVANT FACTS AND EVIDENCE

The prosecution sought to prove at trial that at approximately 11:00 p.m., July 6, 1987, appellant and Isabel Rodriguez Gonzales (a male) entered the locked and closed Clear Fork Elementary School in Lockhart with the intent to commit theft and without the consent of the "owner." *See* Tex.Pen. Code Ann. § 1.07(a)(24) (1974). The prosecution's first witness, Lockhart police officer Gerald Clough, testified that shortly after 11:00 p.m. on the evening in question, he arrived at the elementary school in response to the school's burglar alarm; that when he arrived Isabel Gonzales was already in the custody of other police officers; that a white pickup truck registered to Isabel was parked next to the school's boiler room; that the door to the boiler room appeared to have been forced open; that a window next to a classroom door had been broken out and the door opened; that immediately inside that doorway he found on the floor a microwave oven, a tape recorder, a phonograph, a pair of brown leather loafers (State's exhibit two), and a tire tool (State's exhibit three); and that appellant was not seen in the area at that time.

The State's second witness, Isabel Gonzales, testified that on the evening in question he and appellant drank a large quantity of beer while driving around Caldwell County in Isabel's white pickup truck; that at some point that evening they stopped

---

1. Texas Code Cr.P.Ann. art. 38.14 (1979) provides: "A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense."

beside Clear Fork Elementary School to urinate; that he decided at that time to "break into the school and maybe find some money"; that appellant joined in this endeavor voluntarily; that the two of them broke into the school's boiler room and a classroom; that appellant helped him search for things to steal; that they both placed these items by the door of the classroom; that appellant took off his brown leather shoes and left them by that same door; and that he (i.e., Isabel) was arrested by a police officer in a school restroom.

Clear Fork Elementary School Principal Donna Womble, the prosecutions's third witness, testified that she was the only person with the authority to give appellant permission to enter the school at the time in question, and that she did not give him such permission. The testimony of the prosecution's fourth, fifth, and sixth witnesses is not relevant to the issues raised by appellant and, therefore, will not be detailed here.

At the conclusion of the sixth witness' testimony, the prosecution rested and closed. Appellant then moved for an instructed verdict on the basis of article 38.-14, but the motion was denied. A few minutes later the prosecution asked to reopen and was allowed to do so. *See* Tex. Code Cr.P.Ann. art. 36.02 (1981); *Fullbright v. State*, 131 Tex.Crim. 640, 101 S.W.2d 571 (App.1936). The prosecution then called to the stand appellant's father, John Gonzales, who testified that a few days after the alleged burglary, appellant acknowledged to him that he (i.e., appellant) was, for some unspecified reason, "hiding out" from the police. Officer Clough was then recalled by the prosecution and testified that John Gonzales told him on July 7, 1987, that appellant owned a pair of shoes similar to the pair found at the school. At that point, the prosecution rested and closed again, appellant moved for an instructed verdict again, and the motion was denied again.

Shortly thereafter the prosecution requested permission to reopen a second time, and permission was again granted. Clough was then recalled to the stand a second time and testified that appellant signed a written statement on July 24, 1987:

Q Now, back to this statement, sir, taken on the 24th of July, would you—would you read the first two—the first two or three lines of this one, two, three, four, five sentences, please?

A All right. It says—this is after the— the warnings and waivers. It says, "About two weeks ago, my cousin, Isabel Gonzales, picked me up at my house about 1:00 or 2:00 in the afternoon. We went to San Marcos for a couple of beers. Isabel told me he started drinking in the morning. We rode around until about 10:30 or 11:00 that night. Isabel told me he wanted to go break into the elementary school."

Q Okay. Now, that's enough now. Officer Clough, would you read beginning with the words, "He drove to the school"?

A "He drove to the school. Isabel took the tire tool out of his truck and went down and broke a window. He could open the door to the school then. Isabel went into a room and got a big thing. He carried it back to the door we came in. He left it there and told me he was going to the restroom. When he went to the restroom, I took my shoes off so I could run. I ran out the same door we came in and hid from Isabel. I took off and went home. I didn't know Isabel got caught until the next day."

.    .    .    .    .

Q Officer Clough, good morning. With regards to this statement that—Mr. Gonzales made additional statements, is that correct, from what you have just stated in this statement?

A Than what I just read out loud?

Q Uh-huh. Yes.

A Yes.

Q In the statement, did Mr. Gonzales— Mr. Gonzales also say, "Isabel told me that if I didn't help him he was going to kick the hell out of me"? That's what he said, "kick the hell out of me"?

A Yes.

Q Did he also end his statement by saying, "The only reason I went along with him was that he said he would hurt me and he is bigger than I am and he has beat me up before"?

A Yes.

## DISCUSSION

■ As noted above, appellant contends the evidence was insufficient to prove his intent to commit theft. We disagree. Viewed in the light most favorable to the prosecution, the evidence shows, among other things, that appellant entered the school late at night without the requisite consent. From this alone, reasonable jurors could infer that appellant intended to commit theft. *LaPoint v. State*, 750 S.W. 2d 180 (Tex.Cr.App.1986).

■ Turning next to the accomplice-witness issue, we hold that because Isabel Gonzales' testimony implicated him in the offense charged, he was an accomplice witness as a matter of law. *Kerns v. State*, 550 S.W.2d 91 (Tex.Cr.App.1977). We must therefore examine all the evidence other than Isabel's testimony and determine whether any of it tends to connect appellant with the offense charged. *Reed v. State*, 744 S.W.2d 112 (Tex.Cr.App.1988); *Sonenschein v. State*, 722 S.W.2d 450 (Tex. App.1986, pet. ref'd). Clearly there is evidence (e.g., appellant's own statement) that tends to connect him with the charged offense. *See Romero v. State*, 716 S.W.2d 519 (Tex.Cr.App.1986).

■ Turning finally to point of error two, the question arises whether we should judge the correctness of the trial court's denial of appellant's first motion for instructed verdict in light of *all* the evidence at trial or only in light of the evidence adduced *before the motion was denied.* We conclude the better course is to consider the point in light of all the evidence at trial, because to do otherwise might well "place the appellate court in the untenable position of having to reverse a conviction in the face of a record which supports, albeit belatedly, the trial court's ruling." *Webb v. State*, 760 S.W.2d 263, 272 n. 13 (Tex.Cr. App.1988); *see also* 24A C.J.S. *Criminal*

*Law* § 1836 at 555 (1962). When all the evidence—including appellant's written statement—is considered, it is plain that the trial court's denial of the first motion for instructed verdict does not present reversible error.

The judgment of the trial court is affirmed.