**Jeremy D. GIBSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–05–00426–CR.**

Court of Appeals of Texas,
Waco.

Aug. 1, 2007.

David S. Barron, Bryan, for appellant.

David P. Weeks, Crim. Dist. Atty., Huntsville, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

BILL VANCE, Justice.

A Madison County jury found Appellant Jeremy Gibson guilty of intoxication manslaughter (count 1) and intoxication assault (count 2).[1] The jury assessed a nine-year prison sentence and a $6,000 fine on count 1 and a two-year sentence and a $2,000 fine on count 2. Raising four issues, Gibson appeals. We will affirm

### Sufficiency of the Evidence

■ Gibson's first two issues assert that the evidence is legally and factually insufficient to support the intoxication manslaughter and intoxication assault convictions. When reviewing a challenge to the legal sufficiency of the evidence to establish the elements of a penal offense, we must determine whether, after viewing all the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Our duty is to determine if the finding of the trier of fact is rational by viewing all of the evidence admitted at trial in the light most favorable to the verdict. *Adelman v. State*, 828 S.W.2d 418, 422 (Tex.Crim.App. 1992). In so doing, any inconsistencies in the evidence are resolved in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex.Crim.App.2000).

In a factual sufficiency review, we ask whether a neutral review of all the evidence, though legally sufficient, demonstrates either that the proof of guilt is so weak or that conflicting evidence is so strong as to render the factfinder's verdict clearly wrong and manifestly unjust. *Wat-*

---

1. A Walker County grand jury indicted Gibson, but venue of the case was transferred to Madison County on Gibson's motion.

*son v. State*, 204 S.W.3d 404, 414–15 (Tex. Crim.App.2006); *Johnson v. State*, 23 S.W.3d 1, 11 (Tex.Crim.App.2000). "The court reviews the evidence weighed by the jury that tends to prove the existence of the elemental fact in dispute and compares it with the evidence that tends to disprove that fact." *Johnson*, 23 S.W.3d at 7 (quoting *Jones v. State*, 944 S.W.2d 642, 647 (Tex.Crim.App.1996)). The appellate court "does not indulge in inferences or confine its view to evidence favoring one side of the case. Rather, it looks at all the evidence on both sides and then makes a predominantly intuitive judgment...." *Id.* (quoting William Powers and Jack Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence,"* 69 Texas L.Rev. 515, 519 (1991)). The nature of a factual sufficiency review authorizes an appellate court, although to a very limited degree, to act as the so-called "thirteenth juror" to review the factfinder's weighing of the evidence and disagree with the factfinder's determination. *Watson*, 204 S.W.3d at 416–17.

Gibson specifically asserts that the evidence is legally and factually insufficient on the element of his intoxication at the time of the accident. Gibson was convicted under Penal Code sections 49.07 (intoxication assault) and 49.08 (intoxication manslaughter). These statutes require the actor to have caused serious bodily injury or death, by accident or mistake, by operating a motor vehicle while intoxicated and by reason of that intoxication. *See* Tex. Pen.Code Ann. §§ 49.07(a)(1), 49.08(a) (Vernon 2003). "Intoxication," as it pertains to this case, means "not having the

normal use of mental or physical faculties by reason of the introduction of alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those substances, or any other substance into the body; . . . ." *Id.* § 49.01(2)(A).

Gibson was driving a vehicle on a rural road (FM 1374) in Walker County. The front seat passenger was Gibson's friend Marshall Phillips; the backseat passenger was Amber Brown, Gibson's girlfriend who was six-months' pregnant. As Gibson neared his home around 1:00 p.m. (the responding DPS trooper received the dispatch on the accident around 1:20 p.m.), he failed to negotiate a curve. The vehicle became airborne, hit a tree, and ended up overturned and on fire on the roadside. Gibson did not suffer life-threatening injuries, and Phillips suffered a broken leg. Brown was thrown from the vehicle; she suffered severe head injuries, and her unborn baby died en route to the hospital. Brown died soon after arriving at the hospital.

Phillips testified that, in his opinion, Gibson was not intoxicated at the time of the accident. He said that Gibson had stopped using drugs about thirty-six hours before the accident—on the morning before the day of the accident, Gibson and Phillips had used marihuana, cocaine, and methamphetamine.[2] On the day of the accident, they had gone from Huntsville to Lovelady and were on their way back from Lovelady when the accident happened; Gibson pulled Phillips from the wrecked vehicle.[3] Phillips did not notice any problems with Gibson's driving, and he did not think that

**2.** A physician who treated Phillips testified that he tested positive for cocaine, cannabinoids (marihuana), amphetamine, and benzodiazepines (sedating drugs like Valium).

**3.** DPS trooper Jeter interviewed Phillips about ten days after the accident. He said

that Phillips told him that they had gone to a gas station to buy cigarettes, that he had last used drugs about twelve hours before the accident, and that he undid his seatbelt and pulled himself out of the vehicle just as it was catching on fire.

450

Gibson was speeding; he was going sixty to seventy miles-per-hour, although Phillips admitted that Gibson "could have been" going faster. Phillips said that Gibson was familiar with the road, having driven it many times.

DPS trooper Steven Jeter responded to the accident scene at 1:30 p.m., finding the vehicle on fire off the road and Phillips and Brown lying near the wreck. Gibson was on his knees holding Brown's head. Gibson was in "shock and disarray" and told Jeter that he went off the road and he was speeding. In response to questioning about drug and alcohol use, Gibson admitted to Jeter that he had smoked marihuana that morning. Jeter detected no alcohol odor on Gibson's breath and could not recall if Gibson's speech was slurred. Several syringes and a can of beer were found at the accident scene. Based on his observations at the accident scene and his suspicion that Gibson was intoxicated, Jeter felt that a blood sample should be taken from Gibson to determine any intoxication. Jeter had another trooper and a nurse take a blood sample from Gibson with his consent at 5:15 p.m. in a Houston hospital.[4] Jeter also did an accident reconstruction that revealed Gibson failed to take any evasive action (braking or steering) to prevent the accident and that estimated the vehicle to have been going approximately 91 m.p.h. at the time it left the roadway.

Eduardo Padilla, a DPS toxicologist/forensic scientist, testified about Gibson's blood sample analysis. Two drugs in the sample were diazepam and nordiazepam, commonly known as Valium and its metabolite, and which are from the benzodiazepine class of drugs that are used to treat anxiety and as sedatives. The amount of diazepam was insufficient to quantify, and

the nordiazepam was .22 mg/liter. Padilla explained that the presence of those substances indicated that Gibson had taken Valium within fifty to ninety hours of the time the sample was taken. The level of nordiazepam was within a prescribed therapeutic dosage, but impairing effects such as drowsiness or dizziness were still possible because the intended effect of Valium is to act as a depressant on the central nervous system. Padilla said that even a therapeutic level of Valium can affect a person's motor skills and judgment. Xanax (or alprazolam), another benzodiazepine, was in Gibson's blood sample at a therapeutic level (.05 mg/liter), but it too acts as a depressant on the central nervous system and affects a person's motor skills and judgment; its sedative properties can impair a person's ability to drive by, for example, slowing down response time. A combination of Valium and Xanax causes an additive or greater effect that could further impair a person's ability to operate a vehicle. Finally, Padilla's initial drug screen revealed the possible presence of cocaine metabolite, but further analysis was not done because the remaining sample amount was insufficient. On cross-examination, Padilla said that he was describing the effects of Valium and Xanax on the general population and that their impairing effects on individuals can vary and are only possible, not a certainty, in part because a person can build up a tolerance to the drugs.

Cathy Erwin, another DPS forensic scientist, did further analysis of Gibson's blood sample, finding a positive for the presence of completely metabolized cocaine, meaning that Gibson had probably used cocaine within twenty-four hours, and possibly forty-eight hours, of the sample's

4. The other trooper said that Gibson did not appear to be heavily medicated and was not slurring his speech.

taking. She also found methamphetamine, a central nervous system stimulant, in the amount of .33 mg/liter and opined that Gibson had taken it within seven to fifteen hours. A therapeutic level of methamphetamine, medically used for obesity, narcolepsy, and attention deficit disorder, would be from .02 to .05 mg/liter for obesity or ADD. Gibson had over six times the therapeutic level, an amount found with drug abuse. While methamphetamine is increasing and reaching its peak in the blood, the effect is euphoric and leads to overconfidence and affects judgment. As the level decreases, people generally become fatigued and extremely sleepy, which is accentuated by Valium, Xanax, and marihuana. Thus, Erwin said, methamphetamine users have impaired judgment and motor skills "on the way up" and "on the way down." Typical driving behaviors include wandering out of the lane, speeding, and driving off the road. Erwin reiterated a study's conclusion that any use of methamphetamine is likely to produce impairments that are inconsistent with safe driving. On cross-examination, Erwin admitted that she was describing the possible and potential effects of the drugs on the general population and that she could not say "a hundred percent" that Gibson was impaired; all she could say was that the drugs were in his blood and that those drugs have impairing effects.

Ted Marulas, a defense accident reconstruction expert, criticized Jeter's accident reconstruction, claiming that Jeter's figures failed to take into account the road's slope. Marulas's own reconstruction showed the vehicle moving at a speed of 50 to 60 m.p.h. when it left the road. Gina Heineman, another defense witness and Gibson's former employer, testified that she met Gibson at 11:00 a.m. in Huntsville on the day of the accident to give him his last paycheck. Brown and Phillips were with him. She spoke with Gibson for five to ten minutes and was able to observe him. She said that Gibson appeared normal, and she did not notice slurring of speech or difficulty in walking.

Gibson's sufficiency points complain that there is no direct evidence of Gibson's intoxication—the loss of the normal use of mental and physical faculties caused by his ingestions of drugs—at the time the accident happened. Gibson correctly asserts that no witness specifically testified that Gibson "was intoxicated at the scene of the accident," but he cites no authority holding that the State was required to offer such evidence or that it could not meet its burden of proof on intoxication with circumstantial evidence. See Smithhart v. State, 503 S.W.2d 283, 285 (Tex.Crim.App.1974) ("The rule in driving while intoxicated cases is that in the absence of direct (opinion) testimony, intoxication may be shown by circumstantial evidence."); Hernandez Guerreo v. State, 773 S.W.2d 775, 776 (Tex. App.-Corpus Christi 1989, no pet.) (same); see also State v. McClelland, 2006 WL 2692875, *2 (Tex.App.-Eastland Sept.21, 2006, no pet.) (not designated for publication) (same). Although there was no direct or overwhelming evidence of intoxication at the time of the accident, there was ample evidence from which a rational jury could conclude that Gibson was intoxicated.

Gibson told Jeter he had smoked marihuana that morning. His blood sample revealed the recent ingestion of Valium, Xanax, cocaine, and methamphetamine. The DPS forensic scientists testified how those drugs impair motor skills and judgment. While Phillips and Heineman essentially testified that Gibson was not or did not appear to be intoxicated at or near the time of the accident, the jury as trier of fact is the sole judge of the credibility of the witnesses and the weight to be given the testimony. Cain v. State, 958 S.W.2d

404, 407–09 (Tex.Crim.App.1997). It may "believe all, some, or none of the testimony." *Chambers v. State*, 805 S.W.2d 459, 461 (Tex.Crim.App.1991). The jury can choose to disbelieve a witness even when a witness's testimony is uncontradicted. *Smith v. State*, 789 S.W.2d 419, 420 (Tex. App.-Houston [1st Dist.] 1990, pet. ref'd). Further, Jeter's testimony about the circumstances of the accident itself—Gibson's missing a slight curve while going 91 m.p.h. on a road he was familiar with—is indicative of a loss of normal mental faculties. *See Lewis v. State*, 191 S.W.3d 335, 341 (Tex.App.-Waco 2006, pet. ref'd). Viewing the evidence in the light most favorable to the verdict, we find that a rational trier of fact could have found beyond a reasonable doubt the elements of the offenses, including that Gibson was intoxicated at the time of the accident from his ingestion of drugs. Issue one is overruled. *See Jackson*, 443 U.S. at 318–319, 99 S.Ct. at 2788–89.

Considering all of the evidence in a neutral light, as we must in a factual sufficiency review, we find that the jury was justified in finding Gibson guilty. *See Watson*, 204 S.W.3d at 415. The evidence does not demonstrate either that the proof of guilt is so weak or that conflicting evidence is so strong as to render the jury's verdict clearly wrong and manifestly unjust. *See id.* at 414–15. We must defer to the jury's determination of the credibility of the witnesses, and we may not ignore evidence that supports the jury's verdict. *Johnson*, 23 S.W.3d at 7; *Cain*, 958 S.W.2d at 407. We overrule the second issue.

### Mistrial

Gibson's third issue asserts that the trial court erred in denying his motion for mistrial when Phillips appeared at trial in jail clothing and handcuffs. The State called Phillips as a hostile witness in part to prove that Gibson was the driver and, with respect to the intoxication assault count, to prove Phillips's own serious bodily injury (his broken leg). Phillips entered the courtroom in an orange jail uniform with handcuffs attached to a chain belt, and upon Gibson's objection to Phillip's appearance as prejudicial, the jury was excused.

The prosecutor agreed with the removal of the handcuffs, which the trial court ordered. Gibson's counsel stated that he did not know Phillips would be brought in wearing jail clothing and handcuffs, reiterated his prejudice objection, added a due process objection that Gibson was being denied a fair trial, and moved for a mistrial. The prosecutor said that he knew Phillips was in jail clothing but that he did not know Phillips would be brought in with chained handcuffs. After noting that Phillips was a prosecution witness and that, if his clothing adversely affected his testimony, it would adversely affect the State, the trial court overruled Gibson's objection. Gibson then requested an instruction to disregard the handcuffs and chains and again moved for a mistrial. The trial court denied the mistrial motion but gave the following instruction upon the jury's return:

> Ladies and gentleman, you will note that this witness was brought in in handcuffs and chains and in jail clothing. You should disregard all those matters with respect to his testimony. In other words, you consider what he has to say and not what he's wearing.

Gibson first testified that he was in the Walker County jail on charges of credit card abuse and possession of a controlled substance (cocaine). While he testified about the facts of the accident, his and Gibson's drug use before the accident, and his broken leg, Phillips testified favorably for Gibson, saying that, in his opinion,

Gibson was not intoxicated at the time of the accident. He said that Gibson had stopped using drugs about thirty-six hours before the accident. Phillips did not notice any problems with Gibson's driving, and he did not think that Gibson was speeding; he was going sixty to seventy miles-per-hour, although Phillips admitted that Gibson "could have been" going faster.

■ We review a trial court's denial of a motion for mistrial for an abuse of discretion. *See Hawkins v. State*, 135 S.W.3d 72, 76–77 (Tex.Crim.App.2004). Under that standard of review, we review the trial court's ruling in light of what was before the trial court at the time the ruling was made, and we must uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex.Crim.App. 2000).

■ Requiring a defendant to be tried in jail clothing infringes upon the fundamental right to a presumption of innocence. *Estelle v. Williams*, 425 U.S. 501, 512, 96 S.Ct. 1691, 1697, 48 L.Ed.2d 126 (1976). But this same presumption of innocence does not apply to accomplice (or codefendant) witnesses because they are not on trial. *Craig v. State*, 761 S.W.2d 89, 93–94 (Tex.App.-Beaumont 1988, no pet.); *see Kimble v. State*, 537 S.W.2d 254, 254–55 (Tex.Crim.App.1976). *Thompson v. State* addresses the issue of witnesses in jail clothing and restraints, holding that it is within the trial court's discretion to require that witnesses appear in jail clothing and be shackled if the circumstances warrant. *Thompson v. State*, 514 S.W.2d 275, 277–78 (Tex.Crim.App.1974); *see Cheatham v. State*, 2000 WL 34235115, at *7–8 (Tex.App.-Eastland Sept.21, 2000, no pet.)

(not designated for publication); *Craig*, 761 S.W.2d at 93–94; *Groh v. State*, 725 S.W.2d 282, 284–85 (Tex.App.-Houston [1st Dist.] 1986, pet. ref'd). On appeal, the test is whether or not the trial court abused its discretion in this regard. *Thompson*, 514 S.W.2d at 278. To properly enable a reviewing court to pass upon the trial court's actions, the record should contain factual matters reflecting the criteria upon which the trial court's discretion was exercised. *Id.* Also, the record should reflect, as well, that the trial court had fair knowledge and understanding of such factual matters and surrounding circumstances. *Id.*

Phillips testified that both the prosecutor and defense counsel visited him in jail not long before trial. Gibson thus knew that Phillips was in jail, and he knew or should have known that Phillips might be called as a witness. Courts in other states have held that the defendant has the burden to timely request that an incarcerated witness be permitted to testify in civilian clothing and to supply it for the witness.[5] *See, e.g., Hightower v. State*, 154 P.3d 639, 642 (Nev.2007); *People v. Knight*, 167 P.3d 147, 152 (Colo.App. 2006); *State v. Allah Jamaal W.*, 209 W.Va. 1, 543 S.E.2d 282, 287–88 & n. 13 (W.Va.2000). Gibson did not do this, nor did he advise the trial court that he expected favorable testimony from Phillips on the issue of Gibson's driving and intoxication (although the trial judge stated that he expected Phillips's appearance to adversely affect the State because the State was calling him as a hostile witness). And finally, the trial court instructed the jury to disregard Phillips's jail clothing and handcuffs with respect to his testimony. For these reasons, and although we believe it is better to

---

**5.** "The overwhelming majority of jurisdictions hold that an incarcerated witness should not be compelled to testify in prison clothing." *Hightower v. State*, 154 P.3d 639, 642 & n. 9

(Nev.2007). *See generally* Michelle Migdal Gee, Annotation, *Propriety and Prejudicial Effect of Witness Testifying While in Prison Attire*, 16 A.L.R.4th 1356 (1986).

require that no witness testify in jail clothing, we hold that the trial court did not abuse its discretion in denying the motion for mistrial. Issue three is overruled.

### Special Instruction on Depleted Evidence

The State's forensic scientists testified that the blood sample was depleted in their testing; in fact, they were not able to do all the testing that they wanted to do. In his fourth issue, Gibson complains of the trial court's refusal to include in the charge a spoliation-type special instruction on the State's failure to preserve any of Gibson's blood sample for independent testing. The proposed instruction instructed the jury to assume that the blood sample would be exculpatory.

Gibson's argument is premised on our recent holding that "the State has a duty to preserve material evidence which has apparent exculpatory value, encompassing both exculpatory evidence and evidence that is potentially useful to the defense." *Pena v. State*, 226 S.W.3d 634, 650 (Tex. App.-Waco, 2007, pet. filed). *Pena* involved the inexplicable and undocumented pretrial destruction of about twenty-three pounds of alleged marihuana in a marihuana possession case. Gibson cites no authority from any jurisdiction that the State must preserve a portion of a blood sample that is taken solely for the purpose of testing. We decline to extend *Pena* to the different situation present in this case and overrule his fourth issue.

Having overruled Gibson's four issues, we affirm the trial court's judgment.