IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-08-00118-CR

 

KENNETH TYRONE BRANCH,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 

 



From the 40th District
Court

Ellis County, Texas

Trial Court No. 32246CR

 



MEMORANDUM  Opinion



 








            A jury convicted Kenneth
Tyrone Branch of burglary of a habitation and assessed his punishment at ten
years’ imprisonment.  Branch contends in three issues that: (1) the court
abused its discretion by admitting evidence of an extraneous offense; (2) the
evidence is factually insufficient; and (3) the evidence is legally
insufficient.  We will affirm.

Branch argues in his last two issues
that the evidence is legally and factually insufficient to prove he entered the
complainant’s home with intent to commit theft.

In reviewing a claim of legal
insufficiency, we view all of the evidence in a light most favorable to the
verdict and determine whether any rational trier of fact could have found the
essential element beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); Sells v. State, 121 S.W.3d
748, 753-54 (Tex. Crim. App. 2003); Witt v. State, 237 S.W.3d 394,
395-96 (Tex. App.—Waco 2007, pet. ref’d).

In a factual insufficiency review, we
ask whether a neutral review of all the evidence, though legally sufficient,
demonstrates either that the proof of guilt is so weak or that conflicting
evidence is so strong as to render the factfinder's verdict clearly wrong and
manifestly unjust.  Watson v. State, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006); Witt, 237 S.W.3d at 396.

The indictment alleges that Branch
committed the offense by entering the habitation of the complainant Bertha
Smith with intent to commit theft and without Smith’s effective consent.  See
Tex. Pen. Code Ann. § 30.02(a)(1)
(Vernon 2003).  Intent to commit theft may be inferred from the circumstances. 
Lewis v. State, 715 S.W.2d 655, 657 (Tex. Crim. App. 1986); accord
Guevara v. State, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004) (“Intent may
also be inferred from circumstantial evidence such as acts, words, and the
conduct of the appellant.”).  “[T]he presumption of an intent to commit theft
arises from the nonconsensual nighttime entry of a home.”  Brown v. State,
122 S.W.3d 794, 800 (Tex. Crim. App. 2003); see Gonzales v. State, 766
S.W.2d 395, 398 (Tex. App.—Austin), pet. ref’d, 776 S.W.2d 197 (Tex.
Crim. App. 1989) (per curiam); Lucas v. State, 716 S.W.2d 732, 733 (Tex.
App.—Corpus Christi 1986, no pet.).  Thus, the intent with which a defendant
enters a habitation is a fact question for the jury to decide from the surrounding
circumstances.  Lewis, 715 S.W.2d at 657; Hernandez v. State, 190
S.W.3d 856, 866 (Tex. App.—Corpus Christi 2006, no pet.); accord Darby v.
State, 145 S.W.3d 714, 720 (Tex. App.—Fort Worth 2004, pet. ref’d).

The complainant Smith testified that she
has known Branch since he was a child.  She was sleeping on the living room
sofa on the occasion in question because she was having some work done in her
bedroom at the time.  She was awakened around 2:30 or 3:00 in the morning by a
noise.  When she went to investigate, Branch walked out of her bedroom and
startled her, and she started screaming.  She stopped when Branch identified
himself to her and she recognized him.  He told her “you caught me, didn’t you?” 
Branch patted Smith on the back for a period of time trying to calm her, asking
if she was going to be okay.  After she regained her composure, she told him to
get out of her house, and he did.

Smith did not immediately call the
police because she first wanted to try to speak to Branch’s parents about the
incident.  She testified that he is a regular guest in her home.  “He left with
a little box of something in his hand,” but according to Smith it was nothing
from her home.  To the best of her knowledge, nothing was taken from inside her
home.  She talked to Branch’s father the next day and filed a report with the
police four or five days after the incident.

Branch came by Smith’s house a day or
two after the incident apparently to apologize.[1] 
Smith told him, “I told you if I ever catch you stealing from me, I would call
the police on you.”  She also said, “[I]f I wasn’t here that night  .  .  . 
you could have cleaned my house out.  And he told me, no.  I wouldn’t have got
it all.”

Smith testified over objection that she
later retrieved some flower pots from the Branches’ home which had been taken
from her porch without her knowledge.  Branch’s brother had called the missing
flower pots to her attention.  She was not sure when these pots were taken.

Branch testified in his own defense. 
According to him, he entered Smith’s home that night because he noticed that
her car was gone, her back door was open, and her air conditioner was running.[2] 
He was concerned for her well-being.  He called out for her several times but
got no response.  He looked in her bedroom but did not find her.  It was at
this point that she awakened and discovered him in her home.  His testimony was
fairly consistent with Smith’s concerning his efforts to calm her and her
telling him to leave.  He denied taking anything from her house that night,
explaining that the small “box” Smith saw in his hand was his portable CD
player.  He likewise denied having told her that she had “caught” him when she
first discovered him in her house, and he denied having a conversation with her
about whether he could have “cleaned her house out” if she hadn’t been there.

Branch admitted that he has a previous
felony conviction for possession of cocaine and that he has a “drug problem.” 
He testified that he took the flower pots from Smith’s porch a few weeks before
the burglary because they were placed in a location where Smith frequently left
items for him to have.

Viewing the evidence in a light most
favorable to the verdict, a rational juror could have found beyond a reasonable
doubt that Branch entered Smith’s home with the intent to commit theft because:
(1) it happened at night; (2) Branch told Smith that she had “caught” him; (3)
Branch and Smith later discussed whether he would have been able to “clean
[her] house out” if she had not been there.  See Gonzales, 766 S.W.2d at
398; Lucas, 716 S.W.2d at 733.  Additionally, the jury could infer that
Branch had the requisite intent from the extraneous-offense evidence regarding
the theft of the flower pots.[3] 
See Tex. R. Evid. 404(b). 
Thus, the evidence is legally sufficient to prove that Branch entered Smith’s
home with intent to commit theft.  We overrule Branch’s third issue.

Branch generally contends that the
evidence of intent is so weak that it is factually insufficient.  He also
refers to his own testimony disavowing any intent to commit theft as being so
strong that the jury’s verdict is clearly wrong and manifestly unjust.  Considering
all of the evidence in a neutral light, however, we hold that the jury was
justified in finding him guilty.  See Watson, 204 S.W.3d at 415; Gibson
v. State, 233 S.W.3d 447, 452 (Tex. App.—Waco 2007, no pet.).  The evidence
does not demonstrate either that the proof of guilt is so weak or that
conflicting evidence is so strong as to render the jury’s verdict clearly wrong
and manifestly unjust.  See Watson, 204 S.W.3d at 414-15; Gibson,
233 S.W.3d at 452.  We must defer to the jury’s determination of the
credibility of the witnesses, and we may not ignore evidence that supports the
jury’s verdict.  Thus, we overrule Branch’s second issue.

Extraneous
Offense

Branch contends in his first issue that
the court abused its discretion by admitting the evidence regarding the flower
pots he had taken from Smith’s porch because it was not disclosed in response
to the trial court’s pretrial discovery order.

Smith testified over objection that
Branch had taken the flower pots without her permission but she did not know
when they were taken.  Later, the State offered Branch’s videotaped interview
with a detective in which Branch told the detective that he had taken the
flowerpots from Smith’s porch on a different day than the occurrence for which
he was convicted.  This video and a transcription of the interview were admitted
in evidence and presented to the jury without objection.  During Branch’s
testimony, he explained that he had taken the flower pots three or four weeks
earlier because he thought Smith had left them on her porch for him.

The State contends that the admission of
the videotaped interview without objection renders harmless any error in the
admission of Smith’s testimony regarding the flower pots.  We agree.  See
Saldano v. State, 232 S.W.3d 77, 102-03 (Tex. Crim. App. 2007). 
Accordingly, we overrule Branch’s first issue.

We affirm the judgment.

 

FELIPE REYNA

Justice

Before Chief
Justice Gray,

Justice
Reyna, and

Justice
Davis

Affirmed

Opinion
delivered and filed February 18, 2009

Do not publish

[CR25]









[1]
              According to Smith,
Branch told her, “I know there’s nothing I can do or say can [sic] make things
right.”

 





[2]
              The offense occurred
on July 1.





[3]
              Even assuming there
is merit to Branch’s first issue in which he contends that the court abused its
discretion by admitting this extraneous-offense evidence, we must consider even
erroneously-admitted evidence in evaluating a legal insufficiency claim.  See
Powell v. State, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006).