

# IN THE
# TENTH COURT OF APPEALS

## No. 10-08-00118-CR

**KENNETH TYRONE BRANCH,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

From the 40th District Court
Ellis County, Texas
Trial Court No. 32246CR

## MEMORANDUM  OPINION

A jury convicted Kenneth Tyrone Branch of burglary of a habitation and assessed his punishment at ten years' imprisonment.  Branch contends in three issues that: (1) the court abused its discretion by admitting evidence of an extraneous offense; (2) the evidence is factually insufficient; and (3) the evidence is legally insufficient.  We will affirm.

Branch argues in his last two issues that the evidence is legally and factually insufficient to prove he entered the complainant's home with intent to commit theft.

In reviewing a claim of legal insufficiency, we view all of the evidence in a light most favorable to the verdict and determine whether any rational trier of fact could have found the essential element beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); *Sells v. State*, 121 S.W.3d 748, 753-54 (Tex. Crim. App. 2003); *Witt v. State*, 237 S.W.3d 394, 395-96 (Tex. App.—Waco 2007, pet. ref'd).

In a factual insufficiency review, we ask whether a neutral review of all the evidence, though legally sufficient, demonstrates either that the proof of guilt is so weak or that conflicting evidence is so strong as to render the factfinder's verdict clearly wrong and manifestly unjust. *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006); *Witt*, 237 S.W.3d at 396.

The indictment alleges that Branch committed the offense by entering the habitation of the complainant Bertha Smith with intent to commit theft and without Smith's effective consent. *See* TEX. PEN. CODE ANN. § 30.02(a)(1) (Vernon 2003). Intent to commit theft may be inferred from the circumstances. *Lewis v. State*, 715 S.W.2d 655, 657 (Tex. Crim. App. 1986); *accord Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004) ("Intent may also be inferred from circumstantial evidence such as acts, words, and the conduct of the appellant."). "[T]he presumption of an intent to commit theft arises from the nonconsensual nighttime entry of a home." *Brown v. State*, 122 S.W.3d 794, 800 (Tex. Crim. App. 2003); *see Gonzales v. State*, 766 S.W.2d 395, 398 (Tex. App.—Austin), *pet. ref'd*, 776 S.W.2d 197 (Tex. Crim. App. 1989) (per curiam); *Lucas v. State*, 716 S.W.2d 732, 733 (Tex. App.—Corpus Christi 1986, no pet.). Thus, the intent with which

a defendant enters a habitation is a fact question for the jury to decide from the surrounding circumstances. *Lewis*, 715 S.W.2d at 657; *Hernandez v. State*, 190 S.W.3d 856, 866 (Tex. App.—Corpus Christi 2006, no pet.); *accord Darby v. State*, 145 S.W.3d 714, 720 (Tex. App.—Fort Worth 2004, pet. ref'd).

The complainant Smith testified that she has known Branch since he was a child. She was sleeping on the living room sofa on the occasion in question because she was having some work done in her bedroom at the time. She was awakened around 2:30 or 3:00 in the morning by a noise. When she went to investigate, Branch walked out of her bedroom and startled her, and she started screaming. She stopped when Branch identified himself to her and she recognized him. He told her "you caught me, didn't you?" Branch patted Smith on the back for a period of time trying to calm her, asking if she was going to be okay. After she regained her composure, she told him to get out of her house, and he did.

Smith did not immediately call the police because she first wanted to try to speak to Branch's parents about the incident. She testified that he is a regular guest in her home. "He left with a little box of something in his hand," but according to Smith it was nothing from her home. To the best of her knowledge, nothing was taken from inside her home. She talked to Branch's father the next day and filed a report with the police four or five days after the incident.

Branch came by Smith's house a day or two after the incident apparently to apologize.[1] Smith told him, "I told you if I ever catch you stealing from me, I would call the police on you." She also said, "[I]f I wasn't here that night . . . you could have cleaned my house out. And he told me, no. I wouldn't have got it all."

Smith testified over objection that she later retrieved some flower pots from the Branches' home which had been taken from her porch without her knowledge. Branch's brother had called the missing flower pots to her attention. She was not sure when these pots were taken.

Branch testified in his own defense. According to him, he entered Smith's home that night because he noticed that her car was gone, her back door was open, and her air conditioner was running.[2] He was concerned for her well-being. He called out for her several times but got no response. He looked in her bedroom but did not find her. It was at this point that she awakened and discovered him in her home. His testimony was fairly consistent with Smith's concerning his efforts to calm her and her telling him to leave. He denied taking anything from her house that night, explaining that the small "box" Smith saw in his hand was his portable CD player. He likewise denied having told her that she had "caught" him when she first discovered him in her house, and he denied having a conversation with her about whether he could have "cleaned her house out" if she hadn't been there.

---

[1]     According to Smith, Branch told her, "I know there's nothing I can do or say can [sic] make things right."

[2]     The offense occurred on July 1.

Branch admitted that he has a previous felony conviction for possession of cocaine and that he has a "drug problem." He testified that he took the flower pots from Smith's porch a few weeks before the burglary because they were placed in a location where Smith frequently left items for him to have.

Viewing the evidence in a light most favorable to the verdict, a rational juror could have found beyond a reasonable doubt that Branch entered Smith's home with the intent to commit theft because: (1) it happened at night; (2) Branch told Smith that she had "caught" him; (3) Branch and Smith later discussed whether he would have been able to "clean [her] house out" if she had not been there. *See Gonzales*, 766 S.W.2d at 398; *Lucas*, 716 S.W.2d at 733. Additionally, the jury could infer that Branch had the requisite intent from the extraneous-offense evidence regarding the theft of the flower pots.[3] *See* TEX. R. EVID. 404(b). Thus, the evidence is legally sufficient to prove that Branch entered Smith's home with intent to commit theft. We overrule Branch's third issue.

Branch generally contends that the evidence of intent is so weak that it is factually insufficient. He also refers to his own testimony disavowing any intent to commit theft as being so strong that the jury's verdict is clearly wrong and manifestly unjust. Considering all of the evidence in a neutral light, however, we hold that the jury was justified in finding him guilty. *See Watson*, 204 S.W.3d at 415; *Gibson v. State*, 233 S.W.3d 447, 452 (Tex. App.—Waco 2007, no pet.). The evidence does not demonstrate

---

[3] Even assuming there is merit to Branch's first issue in which he contends that the court abused its discretion by admitting this extraneous-offense evidence, we must consider even erroneously-admitted evidence in evaluating a legal insufficiency claim. *See Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006).

either that the proof of guilt is so weak or that conflicting evidence is so strong as to render the jury's verdict clearly wrong and manifestly unjust. *See Watson*, 204 S.W.3d at 414-15; *Gibson*, 233 S.W.3d at 452. We must defer to the jury's determination of the credibility of the witnesses, and we may not ignore evidence that supports the jury's verdict. Thus, we overrule Branch's second issue.

## Extraneous Offense

Branch contends in his first issue that the court abused its discretion by admitting the evidence regarding the flower pots he had taken from Smith's porch because it was not disclosed in response to the trial court's pretrial discovery order.

Smith testified over objection that Branch had taken the flower pots without her permission but she did not know when they were taken. Later, the State offered Branch's videotaped interview with a detective in which Branch told the detective that he had taken the flowerpots from Smith's porch on a different day than the occurrence for which he was convicted. This video and a transcription of the interview were admitted in evidence and presented to the jury without objection. During Branch's testimony, he explained that he had taken the flower pots three or four weeks earlier because he thought Smith had left them on her porch for him.

The State contends that the admission of the videotaped interview without objection renders harmless any error in the admission of Smith's testimony regarding the flower pots. We agree. *See Saldano v. State*, 232 S.W.3d 77, 102-03 (Tex. Crim. App. 2007). Accordingly, we overrule Branch's first issue.

We affirm the judgment.

FELIPE REYNA
Justice

Before Chief Justice Gray,
　　　Justice Reyna, and
　　　Justice Davis
Affirmed
Opinion delivered and filed February 18, 2009
Do not publish
[CR25]